728 F.2d 209
 Patrick WELLS, Appellant
v.
David ROCKEFELLER, Laurance Rockefeller Rockresorts, Inc.,
Fountain Valley Corporation, Inc., and Estate
Fountain River Company, Inc., Appellees.
FOUNTAIN VALLEY CORPORATION, Appellee
v.
Patrick J. WELLS, Appellant.
 Nos. 83-3142, 83-3403.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 6, 1983.
Decided Feb. 23, 1984.
 
 Herbert Muriel (argued), Charlotte Amalie, St. Thomas, V.I., George Ethridge, Charlotte Amalie, St. Thomas, V.I., for appellant.
 Robert C. Myers (argued), Jonathan W. Miller, Dewey, Ballatine, Bushby, Palmer & Wood, New York City, Todd H. Newman, Nichols & Newman, Christiansted, St. Croix, V.I., for appellees.
 Before HUNTER, WEIS, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In these consolidated Virgin Islands cases, we conclude that in a possessory action the district court properly refused to open a default judgment that the defendant permitted to occur as part of his litigation strategy. In another related cause, we measure the statute of limitations for a civil conspiracy from the overt acts causing damage, and commence the limitations period for an accounting and winding up from the date the joint venture ceased. On these bases, we affirm the judgment in one case, and in the other sustain a summary judgment in part but remand a remaining count not barred by the limitations period.
 
 
 2
 The Fountain Valley Corporation filed a complaint seeking possession of land it had leased to defendant Patrick Wells. He did not answer the complaint but brought a separate suit against Fountain Valley Corporation, David and Laurance Rockefeller, Rockresorts, Inc., and Estate Fountain River Company, alleging, inter alia, fraud in connection with a joint venture in the tract of land covered by the lease. On September 29, 1982, the district court entered a default judgment against Wells in the possessory action. The court later dismissed Wells' suit for failure to present his claims as a counterclaim to the eviction suit brought by Fountain Valley Corporation. Wells' motion to reopen the default judgment was denied.[1] He filed a separate appeal in each case, and, sua sponte, we consolidated them for disposition.
 
 
 3
 In the early 1960s, David and Laurance Rockefeller formed a partnership, the Estate Fountain River Company, to purchase approximately 4,000 acres on St. Croix, Virgin Islands. The long-range plan for the land was the development of a large resort and residential community. Part of the project included the construction of the now famous Fountain Valley Golf Course. Wells, who was in the landscaping business in Florida, participated in the construction of the golf course.
 
 
 4
 The Wells complaint alleges that in 1965 and 1966 he negotiated with Rockefeller aides about establishing a nursery business on St. Croix to supply trees and plants for the proposed resort development. In 1966, Wells began shipping trees to St. Croix and clearing land in the area planned for the nursery, a sixty-four acre tract that was part of the property owned by the Rockefeller partnership.
 
 
 5
 Wells asserts that in 1966 he and the Rockefellers entered into a joint venture agreement for the operation of the nursery. The sixty-four acres were to be part of the capital assets of the venture, which was to be incorporated and its stock equally divided between Wells and Estate Fountain River Company. No such corporation, however, was ever formed.
 
 
 6
 In December 1967, Estate Fountain River Company conveyed a large parcel of land that included the nursery acreage to Fountain Valley Corporation, an entity controlled by the Rockefellers. The deed was not recorded and a Wells affidavit states that the conveyance occurred without his knowledge or consent. It was about this time, Wells contends, that the plans to develop the 4,000 acres were abandoned without any notice to him.
 
 
 7
 On April 1, 1968, Fountain Valley Corporation leased the sixty-four acres to Wells for a period of twelve years. Rental payments were based in part on a percentage of the gross receipts of the nursery. The business did not prosper, and Wells fell behind in his rental payments. In September 1977, he executed a "Partial Surrender Of Lease." In this document Wells relinquished a described portion of the premises in return for the release of all obligations for past and future rentals due under the original lease. The 1977 agreement gave the lessor all nursery stock standing on the surrendered premises. It also stated expressly that, except as set forth, the partial surrender did not modify the terms of the original lease or extend its duration.
 
 
 8
 An uncontradicted affidavit by a Rockefeller aide states that on March 24, 1980, shortly before the twelve-year lease expired, Wells was granted a ninety-day extension to allow him to remove trees and shrubbery from the remaining leasehold. In August 1980, he was granted an additional six months to take the nursery stock away. Finally, in December 1981, Fountain Valley Corporation brought a Forcible Entry and Detainer action under Virgin Islands law, 28 V.I.C. Secs. 782 and 785 (1976), to regain possession of the property.
 
 
 9
 Efforts to secure personal service on Wells were unsuccessful. Pursuant to a court order, notice of the suit was published four times during March 1982 in a local newspaper and a copy of the complaint was mailed to Wells' last known address in Florida. Wells was served again, by certified mail return receipt requested, on July 19, 1982. Wells concedes that he received a copy of the summons and complaint at his Florida address. Approximately a month later, Fountain Valley filed a motion for default judgment. Wells received a copy of that motion by mail on August 24, 1982.
 
 
 10
 Following receipt of the complaint, and on the advice of counsel, Wells took no action on the eviction case. Instead, on September 15, 1982, he filed a separate suit against Fountain Valley Corporation, David and Laurance Rockefeller, Estate Fountain River Company, and Rockresorts, Inc. On September 29, 1982, the court entered a default judgment in the eviction suit against Wells, granting possession of the premises to Fountain Valley Corporation. The Wells complaint was not brought to the attention of the district court before entry of the default judgment, nor did Wells move to consolidate his case with the eviction action.
 
 
 11
 In his separate suit, Wells asserted that he was "duped" into signing the lease in 1968 as part of a conspiracy to deprive him of his joint venture interest. There are also allegations that Fountain Valley Corporation interfered with the operation of the nursery by making false representations to Wells' customers. In his prayer for relief, Wells sought an accounting and winding up of the joint venture, a rescission of the 1968 lease, an order setting aside the 1967 conveyance to Fountain Valley Corporation, and punitive as well as compensatory damages.
 
 
 12
 The district court granted the Rockefeller interests' motion for summary judgment on the theory that the claims set out in the Wells complaint constituted matters that should have been pleaded as a compulsory counterclaim in the eviction suit. Since a default judgment had been entered there, the court viewed Wells' claims as extinguished under Fed.R.Civ.P. 13(a). However, the dismissal order was expressly without prejudice to Wells filing a motion to reopen the default judgment in the eviction suit. 97 F.R.D. at 46.
 
 
 13
 Wells motion to set aside the default and for leave to file an answer and counterclaim raised essentially the same points contained in his now dismissed separate complaint. The district court found that Wells' allegations did not constitute meritorious defenses to the eviction suit because they were barred by the statute of limitations, and in some instances by the statute of frauds as well. 98 F.R.D. at 682-85.
 
 
 14
 Specifically, the court ruled that claims based on the joint venture dated back to 1968 because at that time Wells became aware that Fountain Valley Corporation was the owner of the land. Any joint venture with Estate Fountain River terminated at that point. Applying the two-year tort statute of limitations, 5 V.I.C. Sec. 31(5)(A) (1967), the court concluded that the claims on the joint venture, for fraud, and for an accounting were time barred. The court also found that any action for conspiracy accrued no later than 1977 and thus was barred by the two-year limitations period.
 
 
 15
 Wells' asserted right to remove trees and shrubbery was held foreclosed by the terms of the 1968 lease as reaffirmed in the 1977 release and partial surrender. 98 F.R.D. at 684. The court noted that Wells had been given extensions of time to remove the plantings, notwithstanding that they belonged to the landowners under the terms of the lease. Id. at 688.
 
 
 16
 The court also decided that Wells' culpability in not answering the complaint militated against lifting the default judgment. Id. at 687. The record revealed that Wells and his counsel decided to ignore the eviction action and assert his claims in a separate suit. "There was no mistake by Wells' attorney. Rather, the failure to respond [to either the complaint or the motion to enter a default] was voluntary and intentional.... It was an essential part of his strategy to permit a default judgment." 98 F.R.D. at 688. Wells' theory was that the default would establish an eviction which he could use as the last overt act of a long standing conspiracy and thus circumvent the otherwise expired statute of limitations.
 
 
 17
 * We will first consider the district court's refusal to open the default judgment. Wells contends that under Virgin Islands law, 28 V.I.C. Sec. 294(a) (1976), a default judgment entered in a case where service is by publication must be opened when application is made within two years after entry.[2]
 
 
 18
 The short answer to this argument is that section 294 does not apply to actions of the nature brought by the Fountain Valley Corporation. Forcible Entry and Detainer actions arise under Chapter 31, Subchapter II of Title 28 of the Virgin Islands Code. The location of section 294 in Chapter 13 of Title 28, Actions to Recover Possession of Real Property, persuades us that section 294 only applies to actions brought under that chapter.
 
 
 19
 This conclusion is buttressed by the relief provision of 5 V.I.C. Sec. 112 (1976), the statute governing service by publication. Under section 112(e), a default judgment entered after service by publication can be reopened within one year upon a showing of good cause.[3] The existence of that section, which is similar to section 294 but applicable in all service by publication cases, convinces us that section 294 does not apply in this instance.
 
 
 20
 Moreover, we find that Wells has not satisfied the good cause standard of section 112(e). In the circumstances here, that standard is indistinguishable from the one applied by the district court and enunciated by us in Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir.1982), to determine whether a default judgment should be reopened under Fed.R.Civ.P. 60(b). Because we affirm the district court's decision to deny reopening under Rule 60(b), we conclude as well that the requirements of section 112(e) have not been met.
 
 
 21
 Wells also argues that the court did not have jurisdiction because the summons was defective in reciting that a response to the complaint was due within three days, rather than the thirty days permitted by 5 V.I.C. Sec. 112(c). This shortcoming, however, was not even raised by Wells until brought to his attention by the district judge during one of the hearings. In the circumstances of this case, the error resulted in no prejudice and did not deprive the court of jurisdiction. See Newman v. Prior, 518 F.2d 97, 99 (4th Cir.1975); see also 4 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE Sec. 1088 (1969 & 1982 Supp.). There is no merit to this contention.
 
 
 22
 Wells is on stronger ground in asserting that the district court erred in concluding that he had no meritorious defense to the eviction suit because the statute of limitations barred his invocation of affirmative defenses. A defendant's plea of recoupment, based on a matter arising out of the transaction sued on and used only to defeat a plaintiff's claim, is not generally barred by the statute of limitations. See Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); Heck v. Rodgers, 457 F.2d 303, 307 (7th Cir.1972) ("pure" defense not subject to statute of limitations); 3 J. Moore, MOORE'S FEDERAL PRACTICE p 13.11 (1983). To the extent that the claims made by Wells in his answer were in the nature of recoupment or affirmative defenses, they were not barred by the statute of limitations as against plaintiff Fountain Valley Corporation.
 
 
 23
 We need not explore this matter at any length, however, because the district court may be affirmed for another reason, namely, Wells' and his counsel's considered decision to allow the entry of the default judgment. As the district court found, Wells followed this tactic as a matter of strategy; that being so, he must now live with its consequences. This case, therefore, is quite unlike those in which we have stated that default judgments should be set aside in doubtful situations. Gross v. Stereo Component Systems, Inc., 700 F.2d 120 (3d Cir.1983); Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir.1982); Tozer v. Charles A. Krause Milling Co., 189 F.2d 242 (3d Cir.1951). See also Burns v. MacMeekin (In re MacMeekin), 722 F.2d 32 (3d Cir.1983); Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339 (3d Cir.1982).
 
 
 24
 Wells argues that the default occurred because of his counsel's reasonable error in not anticipating the district court's holding that Wells' claims were compulsory counterclaims. However, the decision to gamble against that eventuality does not justify reopening the judgment in the circumstances of this case. Wells could have taken other, more prudent steps. He might, for example, have filed the counterclaim in the eviction suit and awaited a decision by the district court on whether that procedure was proper. He could also have promptly filed his separate suit and moved to consolidate it with the eviction action before the default was taken. Cf. 6 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE Sec. 1418 at 105 (1971) (when action assertable as counterclaim is brought in same court as other claim, both actions can be consolidated).
 
 
 25
 In any event, Wells' explanation does not justify his failure to present any semblance of a defense against the suit brought by Fountain Valley Corporation. He clearly had the opportunity and the time to file an answer, as well as a counterclaim, as demonstrated by the independent action he filed two weeks before entry of the default judgment. Wells deliberately chose to ignore filing a response and invited a default judgment. The district court properly refused the motion to open the judgment in the circumstances.
 
 II
 
 26
 The Rockefeller defendants attacked the separate Wells suit on the ground that the complaint set out counts that should have been filed as compulsory counterclaims in the eviction case. The district court accepted that contention and granted summary judgment for the defendants.
 
 
 27
 There are some problems with the defendants' approach. Initially we observe that not all of the defendants in the Wells suit were parties to the Fountain Valley eviction action. Under Fed.R.Civ.P. 13, a counterclaim may be asserted only against an "opposing party." See generally 3 J. Moore, MOORE'S FEDERAL PRACTICE p 13.06 (1983). It would seem, therefore, that Rule 13 would not necessarily bar Wells' suit against those not named as plaintiffs in the eviction action. Compare American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1148 (9th Cir.1982); Reconstruction Finance Corp. v. First National Bank of Cody, 17 F.R.D. 397, 404-05 (D.Wy.1955); with Banco Nacional de Cuba v. First National City Bank of New York, 478 F.2d 191, 193 & n. 1 (2d Cir.1973) (can assert counterclaim against alter ego); see also RESTATEMENT (SECOND) OF JUDGMENTS Sec. 29 (1982) (issue preclusion in subsequent litigation with non-parties). As noted in MOORE'S, a difference in emphasis exists in the interpretation of the term "opposing party": a liberal interpretation promotes the bringing of related claims but a narrow construction avoids the harsh penalty of barring subsequently asserted claims. p 13.06 at 13-31 to 13-32.
 
 
 28
 Moreover, the Virgin Islands legislature created the eviction action as a summary proceeding and arguably the applicability of Fed.R.Civ.P. 13 should be read with that objective in mind. See Weems v. McCloud, 619 F.2d 1081, 1093-98 (5th Cir.1980); 5 V.I.C. App. IV R 37 (1982 Supp.); Cf. TPO, Inc. v. Federal Deposit Insurance Corp., 487 F.2d 131, 133 (3d Cir.1973) (counterclaim not stricken though not permitted under state procedure). In addition, there is force to the argument that in light of the restrictive nature of the action, the claims considered compulsory counterclaims should be limited to those directly affecting the plaintiff Fountain Valley Corporation's right to possession. Cf. RESTATEMENT OF JUDGMENTS Sec. 29 Comment c.
 
 
 29
 We prefer, however, to affirm part of the judgment on another ground. We conclude that, with one exception, the claims asserted in Wells complaint are time-barred.
 
 
 30
 Before us in the record on these consolidated appeals are affidavits addressing various issues in the two cases. These affidavits include facts establishing that most of Wells' claims are beyond the statute of limitations. Although expiration of the limitations period may not be used to deny the assertion of an affirmative defense, a claim for affirmative relief that relies on the same factual basis nevertheless comes within the limitations ban.
 
 
 31
 The statute of limitations question was addressed by the parties in connection with the motion to open the default judgment in the eviction case, and the court denied relief on that basis. Because Wells actively disputed the limitations question in that proceeding, we need not remand for the determination of this issue in the action brought by Wells. See Rich v. United States Lines, Inc., 596 F.2d 541, 551 (3d Cir.1979). The material facts on this point are before us on the consolidated record. Cf. Prewitt v. United States Postal Service, 662 F.2d 292, 305 (5th Cir.1981); Mueller v. Turcott, 501 F.2d 1016 (7th Cir.1974). We have the parties and the district court's views on the matter; we will therefore determine whether the grant of the summary judgment can be sustained on the basis of the statute of limitations. Smith v. Virgin Islands, 329 F.2d 135, 142 (3d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1886, 12 L.Ed.2d 747 (1964). See 10 C. Wright & A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE Sec. 2716 at 657-662.
 
 
 32
 The district court concluded that all of Wells' claims sounded in tort and were governed by the two-year limitations period of 5 V.I.C. Sec. 31(5)(A). No challenge has been raised to that ruling on this appeal. Accordingly, we will proceed on that basis as well.
 
 
 33
 Wells' contention is that the district court was incorrect in its assessment of when his causes of action accrued. The complaint alleges that the Rockefellers, in derogation of the joint venture and without Wells' knowledge or consent, conveyed the nursery tract to Fountain Valley Corporation in 1967. The following year, he was allegedly misled into signing the lease for the sixty-four acre parcel. Wells' theory is that these events, culminating in the commencement of the eviction action, formed part of a broad conspiracy to deprive him of the joint venture assets.
 
 
 34
 Because of the long standing conspiracy and the defendants' assurances that the lease was a mere formality, Wells contends that the statute of limitations did not begin to run until the eviction action was brought in 1982. As an alternative argument, he asserts that the limitations period should be tolled because he was not aware of any misconduct in connection with the joint venture and the lease until 1981. He also argues that the joint venture has not yet ended and, therefore, he is entitled to a winding up at this time.
 
 
 35
 One of the Wells' affidavits belies the assertion that he was unaware of any misconduct until 1981. In that document he acknowledges that in March 1968 Rockefeller aides told him that the sixty-four acre tract was owned by Fountain Valley Corporation. Indeed, the lease executed at that time describes the corporation as the owner. The affidavit states that the fact of Fountain Valley Corporation ownership "convinced me that my joint venture agreement with the Rockefellers would be valueless since I was thus led to believe that neither the Rockefellers nor Estate Fountain River Company had any interest in the land."
 
 
 36
 The affidavit further asserts that in 1981 Wells learned that an unrecorded conveyance to Fountain Valley Corporation took place in December 1967, "at a time when I had been led to believe that the land was owned by the Rockefellers and at a time when ... the property ... was being used for our joint business operation...." The timing of the unrecorded conveyance "indicated" to Wells in 1981 "that the Deed [had been] executed for the sole purpose of defrauding me into signing the Lease by intimidating me into believing that my Joint business agreement with the Rockefellers was of no effect in that it involved land that someone else owned."
 
 
 37
 The Wells tolling argument places significance on his lack of knowledge of the conveyance until 1981. However, his own affidavit makes clear that as of March 1968 he was aware of conflicting assertions of ownership to the property and believed that his joint business arrangement with the Rockefellers and Estate Fountain River Company was at an end. Any claims Wells had in connection with that venture or the consumation of the lease accrued during that period. In these circumstances there can be no tolling on the basis of undiscovered fraud because Wells concedes his knowledge of the significance of the events.
 
 
 38
 Moreover, the terms of the original lease are consistent with the termination of Wells' earlier association with the Rockefellers, and the formation of a new arrangement with the Fountain Valley Corporation. This was more than the usual landlord-tenant relationship--the lease acknowledged a $78,000 loan to Wells; rent payments were a percentage of gross receipts less loan payments; and both parties were restricted by a non-competition clause.
 
 
 39
 Wells argues that even if the joint venture was dissolved on the signing of the lease in 1968, he still has a right to a winding up and distribution of the assets. In addressing this argument, the district court used, by analogy, the provision of the Uniform Partnership Act, 26 V.I.C. Sec. 135 (1970), that states "[t]he right to an account ... as against winding up partners" accrues on the date of dissolution. The court concluded, therefore, that the cause of action accrued in 1968. Wells contends that the joint venture, as well as the right to an accounting, continues until the formal winding up of the joint venture's affairs is completed.
 
 
 40
 Under some circumstances, courts have been generous in overlooking delays in seeking an accounting, but no justification for that approach exists here. Wells' own affidavit states that in 1968 he was "convinced ... that [the] joint-venture agreement ... [was] valueless" because his co-venturers did not own the nursery acreage. His new relationship with Fountain Valley Corporation began at that time, continued for more than 12 years, and included renegotiation of the lease terms. No facts have been presented by Wells that would require the court to excuse his lack of diligence in pursuing an accounting in a timely fashion. We conclude that Wells' demand for an accounting and winding up are time barred. Cf. Schlossberg v. Corrington, 80 Ill.App.3d 860, 35 Ill.Dec. 936, 400 N.E.2d 73 (1980); Turner v. Turner, 131 Vt. 253, 305 A.2d 592 (1973).
 
 
 41
 On another tack, Wells contends that the events of 1967 and 1968 are part of a broad conspiracy whose statute of limitations did not begin to run until the commission of the last overt act. Pressing this view, he argues the bringing of the eviction suit in 1982 was the act that began the running of the limitations period and thus his complaint is timely. No Virgin Islands statute or provision of a RESTATEMENT directly addresses the issue raised by Wells. Thus, in determining the controlling rule of decision for the Virgin Islands, we look to other sources of the common law. See 1 V.I.C. Sec. 4 (1967).
 
 
 42
 There is a split of authority on when the limitations period for a civil conspiracy commences. See Auld v. Mobay Chemical Co., 300 F.Supp. 138, 142 (W.D.Pa.1969). Some courts apply the rule used in criminal cases, that is, the limitations period begins on the commission of the last overt act of the conspiracy. See e.g., White v. Bloom, 621 F.2d 276, 281 (8th Cir.), cert. denied, 449 U.S. 995, 101 S.Ct. 533, 66 L.Ed.2d 292 (1980), 449 U.S. 1089, 101 S.Ct. 882, 66 L.Ed.2d 816 (1981). See also Grunewald v. United States, 353 U.S. 391, 396-97, 77 S.Ct. 963, 969-70, 1 L.Ed.2d 931 (1957) (criminal conspiracy).
 
 
 43
 Other jurisdictions, including those of this circuit, have applied the rule that the period runs from each overt act causing damage. See Ammlung v. City of Chester, 494 F.2d 811, 814-15 (3d Cir.1974) (Pennsylvania law); Williamson v. Columbia Gas and Electric Corp., 186 F.2d 464, 469 (3d Cir.1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951); Phoenix Canada Oil Co. v. Texaco, Inc., 560 F.Supp. 1372, 1388-89 (D.Del.1983) (Delaware law); Safeguard Mutual Insurance Co. v. Miller, 477 F.Supp. 299, 308 (E.D.Pa.1979); Park-In Theatres, Inc. v. Paramount-Richards Theatres, Inc., 90 F.Supp. 727, 729 (D.Del.) (Delaware law), aff'd 185 F.2d 407 (3d Cir.1950), cert. denied, 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373 (1951); Auld v. Mobay Chemical Co., 300 F.Supp. 138, 142 (W.D.Pa.1969); Dovberg v. Dow Chemical Co., 195 F.Supp. 337, 342-43 (E.D.Pa.1961). See also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338-42, 91 S.Ct. 795, 806-08, 28 L.Ed.2d 77 (1972). But see Farbenfabriken Bayer, A.G. v. Sterling Drug Inc., 153 F.Supp. 589 (D.N.J.1957) (last overt act causing damage).
 
 
 44
 The rule generally adopted by the case law in this circuit provides greater certainty as to when a particular cause of action arises. For each act causing injury, a claimant must seek redress within the prescribed limitations period. Such a rule is consistent with the distinction between civil and criminal conspiracies. In the civil case, actual injury is the focal point, not the illegal agreement per se, as is true in the criminal context. See W. Prosser, LAW OF TORTS 293 (4th ed. 1971).
 
 
 45
 Adoption of the last overt act rule urged by Wells would invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period. No unfairness results in requiring diligence in seeking a remedy within the period measured from the date an injury occurs. We conclude that Wells' conspiracy allegation would not preserve claims that the district court ruled were otherwise barred by the two-year statute of limitations.
 
 III
 
 46
 It is not clear that all of Wells' claims predate his complaint by two years. In addition to the allegations made in connection with the joint venture and the conspiracy, the Wells' complaint, in a possibly unrelated count, alleges wrongful interference with his business. His affidavit suggests that misrepresentations and acts of conversion were committed by Fountain Valley Corporation against the nursery operation. The time of these acts is not clearly stated, but some events may have occurred as late as 1982.
 
 
 47
 Because of the lack of specificity in both the complaint and the affidavits on this latter issue, it is not possible to establish when all the alleged wrongful acts occurred. Some of the misrepresentations and interference may have occurred in the two-year period before filing the complaint. On the record before us, the statute of limitations issue on these allegations is not ripe for summary judgment.
 
 
 48
 We also note in passing that there may be no nexus between this claim and Fountain Valley Corporation's right to possession of the sixty-four acre parcel. Hence, it is possible that this particular count may not fall in the category of a compulsory counterclaim. Because the facts forming the basis for this count are not developed, we are not in a position to determine whether it is still viable. We therefore conclude that the claims of interference, conversion, and misrepresentation set out in paragraphs 32 and 33 of the Wells complaint should not have been included in the summary judgment. The matter should be addressed by the district court in the first instance after amplification of the record.
 
 
 49
 In summary, we hold that the district court did not err in declining to open the default judgment in the eviction suit brought by Fountain Valley Corporation, and that judgment will be affirmed. We conclude also that summary judgment was properly entered against the plaintiff in the suit brought by Wells, with the exception of the count alleging misrepresentation and interference with his nursery business. The judgment on that count will be vacated and the matter remanded for further proceedings. In all other respects, the summary judgment will be affirmed.
 
 
 
 [1]
 The opinions of the district court are published at 97 F.R.D. 42 (dismissal) and 98 F.R.D. 679 (denial of motion to reopen)
 
 
 [2]
 Section 294 provides in part:
 Vacation of judgment and new trial after service by publication
 (a) When service of the summons is made by publication and judgment is given for want of answer, upon application to the court at any time within two years from entry of the judgment, the defendant, or his successors in interest as to the whole or any part of the property, shall be entitled to an order vacating the judgment and granting a new trial upon the payment of the costs of the action.
 In some respects this provision is similar to 28 U.S.C. Sec. 1655 (1976).
 
 
 [3]
 Section 112(e) provides in part:
 "The defendant as to whom publication is ordered ... may ... upon good cause shown, and upon such terms as may be proper, be allowed to defend after judgment and within one year after the entry of such judgment on such terms as may be just...."