# THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ABSALOM ABSALOM TRUST f/k/a ANNE DEANE 2013 REVOCABLE TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2018-0452-TMR |
| SAINT GERVAIS LLC, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  April 16, 2019
Date Decided:  June 27, 2019

Kevin R. Shannon, Christopher N. Kelly, and Jay G. Stirling, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Nathan M. Bull, Adam K. Magid, and Ailsa H. Chau, CADWALADER, WICKERSHAM & TAFT, LLP, New York, New York; *Attorneys for Plaintiff.*

Davis S. Eagle and Sean M. Brennecke, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, Delaware; Kenneth E. Warner, WARNER PARTNERS, P.C., New York, New York; Richard A. Greenberg, Steven Y. Yurowitz, and William J. Dobie, NEWMAN & GREENBERG LLP, New York, New York; *Attorneys for Defendant.*

**MONTGOMERY-REEVES, Vice Chancellor.**

In this action, plaintiff seeks to compel defendant, a limited liability company, to turn over certain financial records based on plaintiff's status as a member of defendant. Defendant resists, arguing that plaintiff is not a member. For the reasons that follow, I hold that plaintiff is not a member and is not entitled to the records it seeks.

## I.  BACKGROUND

These are my findings of fact based on the parties' stipulations, documentary evidence, and arguments during a half-day trial.[1]

Defendant Saint Gervais LLC (the "Company") is a Delaware limited liability company formed in 1997.[2] Disque D. Deane and Carol G. Deane formed the Company to pass on wealth to their children, Anne and Carl, while maintaining control over that wealth.[3] The Company is governed by the Amended and Restated Operating Agreement for Saint Gervais LLC of June 30, 2006, as amended (the "LLC Agreement").[4]

---

[1]     I cite trial exhibits as "PX #" for Plaintiff's trial exhibits or "DX #" for Defendant's trial exhibits. Unless otherwise indicated, citations to the parties' briefs are to trial briefs.

[2]     PX 01 at 1.

[3]     Transmittal Aff. of Jay. G. Stirling in Supp. of Pl.'s Opening Trial Br. ("Stirling Aff.") Ex. A, at 2. I use first names herein for clarity and without intending disrespect or familiarity.

[4]     PX 01.

Non-party Anne Deane is the settlor and trustee of Plaintiff Absalom Absalom Trust ("Absalom").[5] Anne owned a 35.96% membership interest in the Company, which she purported to assign to Absalom.[6] Absalom brings its claims as a purported member of the Company.

The LLC Agreement places restrictions on transfers of membership interests. Section 5.1 defines disposition to include any type of transfer of membership. Types of disposition include "sale, assignment, transfer, exchange, mortgage, pledge, grant, hypothecation or other disposition."[7] Section 5.2 provides that any disposition without prior written unanimous consent of the managers is "null and void."[8] Section 5.3 declares any substitution of members without prior written consent of all of the managers is "null and void."[9]

---

[5]     Stirling Aff. Ex. A, at 2.

[6]     *Id.*

[7]     Stirling Aff. Ex. B § 5.1.

[8]     "[A] Member may dispose of such Member's membership interest in the Company in whole or in part only with the prior written consent of all of the Managers which consent may be given or withheld in their sole and absolute discretion. Any purported disposition of a membership interest in the Company without the prior written consent of all the Managers shall be null and void." *Id.* § 5.2.

[9]     "An assignee of a membership interest shall be admitted as a substitute Member . . . only with the prior written consent of all of the Managers, which consent may be given or withheld in their sole and absolute discretion. Any purported substitution of a Member in the Company without such prior written consent shall be null and void." *Id.* § 5.3.

On June 7, 2018, counsel for Absalom sent the Company a letter demanding to inspect certain categories of documents (the "Demand Letter").[10] The Demand Letter stated that the purposes for the inspection were to "(i) evaluate the value of [Absalom's] ownership interests, (ii) evaluate the financial condition of the Company, and (iii) investigate possible acts of mismanagement and/or improper conduct in connection with the management of the Company."[11] The Demand Letter identified as the topics for inspection "(i) [Carol]'s decision to reduce the Company's sharing ratio in Starrett City Preservation LLC," a company in which the Company has an economic interest, "(ii) [Carol]'s improper use of Company funds for personal expenses, and (iii) [Carol]'s improper refusal to provide true and full information regarding the financial and operation condition of the Company."[12]

The Demand Letter sought seven categories of books and records: (1) "[d]etailed balance sheets for each year from 2014 through the latest available date in 2018;" (2) "[d]etailed profit and loss statements for each year from 2014 through the latest available date in 2018;" (3) "[f]ederal and state tax returns filed by the Company from 2014 through the present;" (4) "[d]ocuments sufficient to determine all payments or distributions made by the Company since 2014, including

---

[10]     Stirling Aff. Ex. A, Ex. A, at 1.

[11]     *Id.* at 2.

[12]     *Id.*

the date, amount, and recipient of all such payments or distributions;" (5) "[t]o the extent not included in the above requests, the 'complete and accurate books and records of the Company's business and affairs' kept in accordance with Section 2.1 of the LLC Agreement;" (6) "[t]o the extent not included in the above requests, the 'reports concerning the financial condition and results of operations of the Company and the capital accounts of the Members' prepared in accordance with Section 2.3 of the LLC Agreement;" and (7) "[a]ll documents relating to Carol's decision to reduce the Company's sharing ration in Starrett City Preservation LLC."[13]

After Absalom sent its Demand Letter, the parties discussed the documents Absalom had requested, which documents the Company had already provided, Anne's assignment of her interest to Absalom, and a potential settlement.[14] These discussions lasted several weeks but ultimately did not produce a negotiated agreement.

On June 25, 2018, Absalom filed this lawsuit.[15]

---

[13]     *Id.* at 1-2.

[14]     *See* Transmittal Aff. of Sean M. Brennecke in Supp. of Def.'s Opening Trial Br. ("Brennecke Aff.") Ex. 6.

[15]     *See* Stirling Aff. Ex. D.

## II.    ANALYSIS

The LLC Agreement authorizes only members to inspect books and records. The Company argues that Absalom lacks standing to seek books and records because Anne's attempt to transfer her membership interest to Absalom was null and void. Absalom argues that equitable principles bar the Company from raising this defense.

The validity of the transfer and the outcome of the standing issue turn on the meaning of the LLC Agreement. "When analyzing an LLC agreement, a court applies the same principles that are used when construing and interpreting other contracts."[16] "When interpreting a contract, the role of a court is to effectuate the parties' intent."[17]

> Because Delaware adheres to the objective theory of contract interpretation, the court looks to the most objective indicia of that intent: the words found in the written instrument. As part of this initial review, the court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer.[18]

---

[16]    *Godden v. Franco*, 2018 WL 3998431, at *8 (Del. Ch. Aug. 21, 2018).

[17]    *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

[18]    *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008) (footnotes omitted).

"[W]here a word has attained the status of a term of art and is used in a technical context, the technical meaning is preferred over the common or ordinary meaning."[19] "When established legal terminology is used in a legal instrument, a court will presume that the parties intended to use the established legal meaning of the terms."[20] "If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent."[21] "[W]hen we may reasonably ascribe multiple and different interpretations of a contract, we will find that the contract is ambiguous."[22] Despite that, "[t]he parties' steadfast disagreement will not, alone, render [a] contract ambiguous."[23]

---

[19] *Viking Pump, Inc. v. Liberty Mut. Ins. Co.*, 2007 WL 1207107, at *13 (Del. Ch. Apr. 2, 2007).

[20] *Penton Bus. Media Hldgs., LLC v. Informa PLC*, 2018 WL 3343495, at *12 (Del. Ch. July 9, 2018) (citations omitted).

[21] *Id.* (quoting *City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)).

[22] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

[23] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.").

## A. Absalom Is Not a Member

The LLC Agreement forbids any "disposition" of a membership interest, including "assignment" and "transfer," absent "prior written consent of all of the Managers" of the Company.[24] Any disposition made in violation of this provision, or any substitution of members, is "null and void."[25] The Delaware Supreme Court recently examined language in an LLC agreement declaring certain acts to be void. In *CompoSecure, L.L.C. v. CardUX, LLC*, the Supreme Court considered an LLC agreement that provided that Restricted Activities, as defined by the LLC agreement at issue, were "void and of no force or effect whatsoever."[26] In considering whether a separate contract was voidable or void, the Supreme Court determined that "the plain language of the provision would render the [contract] void, and therefore incapable of being ratified."[27] The Supreme Court defined void acts as those that are "*ultra vires* and generally cannot be ratified."[28]

The same result follows here. The language before me is functionally identical to the language before the Supreme Court in *CompoSecure*. Both

---

[24] Stirling Aff. Ex. B §§ 5.1-5.3.

[25] *Id.* §§ 5.2, 5.3.

[26] 206 A.3d 807, 810 (Del. 2018).

[27] *Id.* at 816.

[28] *Id.*

8

provisions contain the word "void." "Null" means "[h]aving no legal effect; without binding force."[29] The parties agree that Anne's transfer of her membership to Absalom occurred without prior written consent. Thus, by the plain and unambiguous terms of the LLC Agreement, the transfer has no effect, meaning Absalom holds no interest in the Company.

## B. Absalom's Contextual Arguments Fail

Absalom responds with several arguments: (1) equitable defenses bar the Company from claiming that Absalom is not a member; (2) the nature of LLCs is to be flexible and informal such that the course of conduct should control rather than the language of the LLC Agreement; and (3) the anti-transfer provision exists to prevent strangers from becoming members, and Absalom is not a stranger. All fail.

### 1. Equitable defenses are not available

Absalom argues that several equitable defenses bar the Company's assertion that the assignment is void and Absalom is not a member. Absalom points to laches, waiver, equitable estoppel, ratification, and acquiescence,[30] arguing that the Company granted Absalom access to some of the Company's records,[31] referred to

---

[29] *Null*, Black's Law Dictionary (11th ed. 2019). Furthermore, "[t]he phrase *null and void* is a common redundancy." *Id.*

[30] *See* Pl.'s Opening Supp. Br. 8-17.

[31] Pl.'s Reply Br. 3.

9

Absalom as a member in some of its trial papers,[32] and issued Schedule K-1 tax forms to Absalom,[33] all without reserving the right to contest Absalom's status as a member.[34] According to Absalom, this conduct estops the Company from now disputing Absalom's status as a member and its entitlement to seek books and records.[35]

Equitable defenses can validate voidable acts but not void acts.[36] In *CompoSecure*, the Delaware Supreme Court recently held that by using the word "void" in an LLC agreement, the parties to the agreement adopted the common law rule and foreclosed the application of equitable defenses. The court reasoned as follows:

> The common law rule is that void acts are *ultra vires* and generally cannot be ratified, but voidable acts are acts falling within the power of a corporation, though not properly authorized, and are subject to equitable defenses. Ordinarily, [a contract] would be voidable for failure to

---

[32] *Id.*

[33] *Id.* at 4.

[34] *Id.* at 5-6.

[35] *Id.* at 6. Absalom further argues that this Court should not consider the Company's argument that Absalom is not a member because the Company waited too long to assert it. *See* Pl.'s Reply Br. 3-7. The Company sufficiently raised the issue of Absalom's membership in its Answer. *See* Answer ¶¶ 3, 4, 23.

[36] *See Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1046 (Del. 2014) ("[o]nly voidable acts are susceptible to . . . equitable defenses." (quoting *Boris v. Schaheen*, 2013 WL 6331287, at *15 (Del. Ch. Dec. 2, 2013))).

10

comply with [a provision].  But, given the plain language of the [provision]—"void and of no force or effect whatsoever"—its application would trump the common law rule and render the [contract] void and incapable of being ratified.[37]

Although *CompoSecure* addressed the defense of ratification, its logic extends to other equitable defenses as well.

At common law Anne's transfer of her membership interest to Absalom would be likely be voidable, not void.  The reasoning in *CompoSecure*, however, mandates that the contractual language—"void"—trumps the common law, rendering the assignment ineffective and invulnerable to equitable defenses.  Thus, under *CompoSecure*, Absalom cannot rely on equitable defenses to validate its status as a member.

Absalom attempts to distinguish *CompoSecure*, arguing that in that case, the parties "promptly" sought to enforce their rights, while here they waited.[38]  Although this is a valid factual distinction, it does not impact the conclusion that using the word "void" in the LLC Agreement trumps the common law rule.

Absalom also argues that *CompoSecure* differs from this case because the *CompoSecure* court "held that *corporate* action taken in violation of the entity's

---

[37]     *CompoSecure*, 206 A.3d at 816-17 (citations omitted).

[38]     Pl.'s Opening Supp. Br. 7.

11

governing instrument was void. The Courts were concerned with the *ultra vires* nature of the corporate action. That is a wholly irrelevant consideration here because no such prohibited corporate action is challenged."[39] Absalom adds that "[e]ven if Anne's transfer implicated prohibited corporate action, a technical deficiency would be no basis to avoid the transfer. Anne's failure to obtain prior consent should be construed as merely resulting in the transfer being 'capable of being avoided' by the Company."[40] Absalom's arguments highlight what makes an act void or voidable under common law. But, Absalom's arguments fail to take into account the Supreme Court's ruling in *CompoSecure* that the contractual imposition of voidness "trumps" the common law. Although *ultra vires* acts are void and although the transfer of interest is likely not *ultra vires* under the common law, the LLC Agreement nonetheless renders the transfer void and immune to equitable defenses.

Absalom also argues that the statute of limitations prevents the Company from asserting its affirmative defenses. The parties have agreed that the statute of limitations is a legal defense and thus is not foreclosed by *CompoSecure*, and I accept

---

[39] Pl.'s Reply Supp. Br. 4-5.

[40] *Id.* at 5 (citations omitted).

12

their agreement for purposes of this decision. A statute of limitations, however, is not available to defeat an affirmative defense.[41]

### 2. The informality of LLCs

Absalom adds that the "flexible and less formal nature of LLCs" means that this Court should treat Absalom as a member "notwithstanding the language of the operating agreement."[42] Absalom relies on *Mickman v. American International Processing, L.L.C.*[43] to argue that this Court should consider the "'course of dealing among parties,' rather than rely on formalities. Indeed, 'under Delaware's LLC Act, "substance is supposed to be paramount over form.""'[44]

---

[41] *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 72 (1956) ("To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation."); *Wells v. Rockefeller*, 728 F.2d 209, 215 (3d Cir. 1984) ("Although expiration of the limitations period may not be used to deny the assertion of an affirmative defense, a claim for affirmative relief that relies on the same factual basis nevertheless comes within the limitations ban."); *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 638 (D. Del. 2014) ("[G]enerally, affirmative defenses are not subject to statutes of limitations.").

[42] Pl.'s Reply Trial Br. 7 (quoting *Mickman v. Am. Int'l Processing, L.L.C.*, 2009 WL 891807, at *2 (Del. Ch. Apr. 1, 2009)).

[43] 2009 WL 891807 (Del. Ch. Apr. 1, 2009).

[44] Pl.'s Reply Br. 8 (quoting *In re Grupo Dos Chiles, LLC*, 2006 WL 668443, at *2 (Del. Ch. Mar. 10, 2006); *In re Oxbow Carbon LLC Unitholder Litig.*, 2018 WL 818760, at *47 (Del. Ch. Feb. 12, 2018)).

13

In *Mickman* the Court considered a motion for summary judgment in an action for books and records.[45]  The defendant argued that it was entitled to summary judgment because the plaintiff was not a member.[46]  The company, however, had submitted documents to the IRS signed by the company's only manager and only two members reporting that the plaintiff was a member.[47]  The plaintiff argued that, as a result, the company was estopped from arguing that she was not a member.[48]  The Court considered the equitable defenses and declined to decide the issue on the merits.  Instead, the Court denied both motions due to "disputed issues of material fact" and in light of the company's "apparent failure to provide appropriate discovery on their defense that [p]laintiff lacks a membership interest."

*Mickman* is distinguishable because nothing suggests that the operating agreement deemed unauthorized transfers "null and void."  *Mickman* also pre-dated the *CompoSecure* ruling that a contractual specification of voidness would override the application of equitable defenses.  In this case, the unambiguous contractual language controls.

---

[45]     *Mickman*, 2009 WL 891807, at *1.

[46]     *Id.* at *2.

[47]     *Id.*

[48]     *Id.*

14

### 3. The no-strangers argument

Absalom also argues that the anti-transfer provision's aim is to ensure that "LLC members not be forced into business with a stranger," which is not a concern here because there is no real difference between Anne and Absalom. [49] The evident purpose of a provision can influence its interpretation, but it cannot override the plain language of the provision. "When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement.'"[50] "Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract."[51] "When the language of a contract is plain and unambiguous, the intent of the parties expressed in that language is binding."[52] "A disguised intent, not immediately obvious in the language of the contract and requiring a tortured construction of its terms, can not overcome plain,

---

[49]  Pl.'s Reply Br. 8-9 (quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at \*2 (Del. Ch. Mar. 31, 2003) ("This Provision can be viewed as touching on important aspects of the Companies' governance and basic nature, reflecting as it does a commitment by the founding members . . . that the original members should have the opportunity to buy the other members' units before they passed into the hands of strangers." (alteration in original))).

[50]  *Salomone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (quoting *GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

[51]  *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003).

[52]  *Sun-Times Media Gp., Inc. v. Black*, 954 A.2d 380, 389 (citing *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992)).

15

unambiguous language."[53] In light of the Supreme Court's holding in *CompoSecure*, the plain language of "null and void" reflects a specific intent to override the common law and cause the transfer to be void. Whether or not Anne is a stranger does not impact the intent as reflected in the four corners of the contract, and thus, it also does not impact Absalom's lack of standing in this case. Further, the Company has repeatedly asserted that Anne is a member, so Anne may seek books and records on her own behalf.

## C. Absalom Does Not Have Equitable Standing for This Action

Absalom argues that even if it is not a member, "equity must intervene to permit [Absalom] to review the materials sought in the Demand."[54] Absalom contends that "'[e]quity always attempts to . . . ascertain, uphold, and enforce rights and duties which spring from the *real* relations of parties,' 'regards substance rather than form,' and also 'regards that as done which in conscience ought to be done.'"[55] Absalom adds that "any other result would allow a fiduciary to avoid liability for her self-serving conduct."[56]

---

[53]  *Sanders v. Wang*, 1999 WL 1044880, at *8 (Del. Ch. Nov. 8, 1999).

[54]  Pl.'s Reply Br. 9-10.

[55]  *Id.* (quoting *In re Carlisle Etcetera LLC*, 114 A.3d 592, 607 (Del. Ch. 2015)).

[56]  *Id.* at 9.

16

Absalom fails to explain in any convincing manner why this Court should invoke equitable principles to override the plain language of the provision, especially in light of the *CompoSecure* ruling that the contractual imposition of voidness trumps the common law. Thus, the unambiguous language controls in this case. The plain language of the LLC Agreement limits books and records requests to members, and I held above that Absalom is not a member. Therefore, Absalom does not have standing.

## III.  CONCLUSION

For the foregoing reasons, I hold that Absalom is not entitled to inspect the books and records it seeks in this litigation.

**IT IS SO ORDERED**.