Aida FELICIANO,

v.

**RELIANT TOOLING COMPANY, LTD. and Union Special Corporation, Sun Alliance and London Insurance, Limited, Appellants.**

No. 82–1176.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1982.

Decided Oct. 26, 1982.

Mary L. B. Betts (argued), Shelia H. Marshall, Joseph L. Seiler, III, LeBoeuf, Lamb, Leiby & MacRae, New York City, Jeremy D. Mishkin, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellants.

Fred T. Magaziner (argued), Norbert F. Bergholtz, Philip M. Kruger, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

A default judgment was entered against an English insurance company for failure to answer interrogatories directed to it as garnishee and served on it in the United Kingdom. The carrier later submitted to the jurisdiction of the district court to ask that the judgment be opened, but the motion was denied. We conclude that the company's reasonable doubt about the personal jurisdiction of the American court demonstrates a lack of bad faith on its part. That factor, combined with a facially meritorious defense and a lack of prejudice to the judgment creditor, counsel that the default be opened. Accordingly, we vacate the judgment of the district court and remand for proceedings on the merits.

In 1978, plaintiff Feliciano a citizen of Costa Rica brought suit in the Eastern District of Pennsylvania against Union Special Corporation, incorporated in Delaware, and Reliant Tooling Company, Ltd., incorporated in the United Kingdom. Plaintiff sought damages for personal injury sustained in Pennsylvania allegedly caused by a defective machine that was manufactured by Reliant and sold by Union. Feliciano's direct claim against Reliant was dismissed for lack of diversity. However, Union pressed a third-party claim against Reliant, serving it, as had Feliciano, by registered mail through the Secretary of the Commonwealth of Pennsylvania. Reliant did not appear in the litigation or participate in any way.

After trial began, plaintiff and Union settled her claim for $250,000. A few days later, the district court, on Union's motion, entered a default judgment for $250,000 on the cross-claim against Reliant. The same day, Union[1] filed a praecipe for a writ of execution directed against Reliant as defendant and against its liability insurer, Sun Alliance and London Insurance, Ltd., as garnishee. The writ and interrogatories were served upon Sun in England, pursuant to the terms of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done at the Hague, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

Within a week of service, Sun's solicitor wrote to counsel for Union and sent a copy to the clerk of the district court. In the letter, the solicitor said:

> "[w]e are puzzled by the form of proceedings. It is unknown in this country for Garnishee proceedings to be taken against an Insurer where judgment has been obtained against an Insured.
>
> \*   \*   \*   \*   \*   \*
>
> In proceedings in the English Courts, no person can be required to answer interrogatories without an order of the Court. The documents do not recite any such order.
>
> \*   \*   \*   \*   \*   \*
>
> Our clients do not intend to submit to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. They do not, however, wish to be discourteous and we are therefore instructed to outline briefly the reasons why they are under no obligation to indemnify the Reliant Tooling Co. Ltd. and

[1] The real party in interest is the Liberty Mutual Insurance Company, Union's liability carrier, which paid the settlement to Feliciano. We refer only to Union for the sake of simplicity.

to indicate the answers they would have given, had they filed answers to your interrogatories."

The solicitor listed the answers, stated that claims similar to those of Feliciano were excluded from coverage by the policy terms and asserted that the judgment against Reliant was unenforceable because Reliant had never submitted to the court's jurisdiction.

Union did not respond to the solicitor's letter, but on April 16, 1981, almost two months later, moved for entry of a default judgment against Sun for failure to answer the interrogatories. The motion did not refer in any way to the solicitor's letter. A copy of the motion was mailed to Reliant, but none was served upon Sun. On May 4, 1981, the district court entered judgment in favor of Union against Sun in the amount of $250,000, "together with counsel fees, costs and interest."

Following entry of the judgment, Union obtained writs of execution and garnishment accompanied by interrogatories directed to three subsidiaries of Sun and a company owned wholly by one of the subsidiaries.[2] All of these companies have their principal offices in London, England, but have branch offices in New York and submit annual filings to the Pennsylvania Insurance Department. After additional extensive interrogatories were served upon the companies, Sun decided to appear in the district court.

In January 1982, Sun asked the court to set aside the May 4, 1981 judgment, to accept answers to the garnishment interrogatories originally served upon Sun, and to grant judgment in its favor on the coverage question. In the alternative, the carrier asked that the judgment against Reliant be set aside and that Sun be permitted to defend against Union's cross-claim. As part of its motion, Sun recited the history of the litigation and attached copies of an English barrister's opinion on the coverage issue as well as the letter of the company solicitor to Union's counsel. Sun said further that if the coverage issue were decided adversely to it, the carrier would agree to pay without the necessity of any foreign proceedings. After briefing by both parties, the district court denied Sun's motion without findings or opinion.

On appeal, Sun contends that the district court abused its discretion in refusing to set aside the default judgment and particularly in failing to recognize the interests of international comity. Union argues that, having chosen to allow the default to be taken against it, Sun should not be heard to complain at this point.

The Federal Rules of Civil Procedure do not set out detailed directions for execution on civil judgments. Instead, Rule 69(a) provides that proceedings in aid of execution follow state practice. In this case, those procedures are found in the Pennsylvania Rules of Civil Procedure 3101–3149.

The Pennsylvania rules provide that after a writ of execution is issued, the judgment holder may serve interrogatories on the garnishee respecting property possessed by him but owned by the judgment debtor. Pa.R.Civ.P. 3144. "The procedure between the plaintiff and garnishee shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in assumpsit." Pa.R.Civ.P. 3145. If the garnishee fails to file an answer to the interrogatories within 20 days, judgment may be entered against him in the same amount as the original judgment against the defendant. Pa.R.Civ.P. 3146.[3] It was this state

---

**2.** The subsidiaries are Alliance Assurance Company, Ltd., The London Assurance, and Sun Insurance Office, Ltd. The Sea Insurance Company, Ltd. is wholly owned by The London Assurance.

**3.** Since the time of the entry of judgment against Sun, Rule 3146 has been amended, effective February 8, 1982. The rule in effect at the time of Sun's default allowed the entry of judgment in the amount of the original judgment upon a garnishee's failure to seasonably answer the interrogatories. The amended rule provides for the entry of judgment, unliquidated in amount, following a garnishee's failure to file answers to interrogatories within the requisite time period. The amount is assessed by

procedure which Union followed in proceeding against Sun.

As noted earlier, service of the garnishment documents was made on Sun in accordance with the provisions of the Hague Convention. Because Sun has raised no objection to the method of service, we may take it as being proper. Sun has also voluntarily submitted to the jurisdiction of the district court. Therefore we need not inquire whether that court had the power to enter a valid default judgment on a claim based on an insurance contract entered into in England between two English concerns, neither of which has offices in the United States.

We look then to the matter of the district court's refusal to open the default judgment. Sun's motion was filed under Fed.R. Civ.P. 60(b), which provides for relief from judgments in defined circumstances. Subsection (b)(1) lists as possible grounds, "mistake, inadvertence, surprise or excusable neglect." Subsection (b)(6) refers to "any other reason justifying relief from the operation of the judgment." Relief under (b)(1) requires that the motion be made within one year from the date of the judgment; motions pursuant to (b)(6) need be made only within a reasonable time. Since the parties do not dispute the timeliness of the motion and we find that the motion was filed within both a reasonable time and the one-year period, it is not necessary to choose between the two subsections in reaching our decision. See 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.27[1] at 346 (2nd ed. 1982).

Defaults are also treated in Rule 55(c), which authorizes a court to "set aside the entry of default" for "good cause shown". There is a distinction between a default standing alone and a default judgment. If a judgment by default has been entered, it may be set aside "in accordance with Rule 60(b)." Id. Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment. Thus, "[a]ny of the reasons sufficient to justify the vacation of a default judgment

the court after notice to the garnishee and a

under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be enough to open a default judgment." 10 C. Wright & A. Miller, Federal Practice and Procedure § 2696 at 334 (1973).

In Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951), we said that in passing upon default judgments Rule 60(b) should be "given a liberal construction.... Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." We followed that admonition in Livingston Powdered Metals, Inc. v. N.L. R.B., 669 F.2d 133 (3d Cir. 1982), a case involving the entry of a de facto default judgment by the NLRB against an employer. We also quoted the Tozer standard in Medunic v. Lederer, 533 F.2d 891, 893–94 (3d Cir. 1976), although there a default, rather than a default judgment, was challenged.

Our most recent foray into the field was Farnese v. Bagnasco, 687 F.2d 761 (3d Cir. 1982), where again it was a default entry, not a judgment, that was at issue. Although as we have noted the standards for the two situations are not always the same, we believe that the three factors discussed in Farnese should be applied in both situations:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

Farnese, at 764; see also Livingston Powdered Metals, Inc., 669 F.2d at 136; Tozer, 189 F.2d at 244–45, 246.

■ We consider these points seriatim. Union has not demonstrated any prejudice that would result from opening the judgment, other than the financial costs associated with enforcing a judgment later vacated. Delay in realizing satisfaction on a

hearing.

claim rarely serves to establish the degree of prejudice sufficient to prevent the opening a default judgment entered at an early stage of the proceeding. *See Tozer,* 189 F.2d at 246. In addition, prejudice suffered by a non-defaulting party can often be rectified through the trial court's power under Rule 60(b) to impose terms and conditions upon the opening of a judgment. *See Wokan v. Alladin International Inc.,* 485 F.2d 1232, 1234–35 (3d Cir. 1973); 10 & 11 C. Wright & A. Miller, Federal Practice and Procedure §§ 2700, 2857 (1973).

■ Union has not suggested that its ability to pursue the claim has been hindered since the entry of the default judgment. It has not asserted loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment to support a finding of prejudice. *See Farnese v. Bagnasco,* at 764; *General Tire & Rubber Co. v. Olympic Gardens, Inc.,* 85 F.R.D. 66, 70 (E.D.Pa.1979); Restatement (Second) of Judgments § 74 (1982). Since the record does not support a claim of prejudice justifying denial of relief, we conclude that the first factor weighs in Sun's favor.

Sun has advanced at least one meritorious defense, namely, its contention that the policy does not cover Reliant with respect to the Feliciano injury. This argument is supported by the opinion of a barrister at Grays Inn, James Roland Blake Fox-Andrews, Q.C., based on his review of English law. We, of course, express no view on the merits of the coverage question but observe that, *prima facie,* Sun does have a valid defense.

In addition, the liability of Sun depends upon the validity of the default judgment entered against Reliant. Sun's solicitor wrote that Reliant had never submitted to American jurisdiction and that the judgment against Reliant was unenforceable. In deciding not to appear, Reliant acted on the advice of independent counsel. Since the record before us does not contain such pertinent information as Reliant's theory for asserting lack of jurisdiction or evidence on that point, we cannot say that there may not be substance to Sun's position.

The third *Farnese* factor focuses on whether the defendant was culpable, that is, whether it acted willfully or in bad faith. Union argues that Reliant and Sun had obligations toward Feliciano that they sought to avoid by ignoring the proceedings in the American courts. Union concedes that British and American concepts on "extensions of personal jurisdiction" differ, but says that an American court should not "require its citizens to adhere to foreign procedures simply because American procedures differ." Union's Brief at 21, 22. Union's parochial attitude requires serious re-evaluation because it does not aid the solution of complex problems engendered by international trade, transnational corporations, and conflicting national interests. As we pointed out in *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287, 1297 (3d Cir. 1979), eschewing a provincial approach better comports with the realities of international commerce.

A more accommodating approach leads to a different interpretation of Sun's conduct than that urged by Union. Sun was confronted with an unusual form of process. Their solicitor said he was "puzzled" by it. We see no reason to question that statement. It would indeed be unrealistic to expect English solicitors to be acquainted with the execution process of each of the fifty states. Not only was the procedure unusual insofar as it concerned the relationship between a claimant and an insurance company, but the pleadings were in the form of interrogatories, which generally require an order of court to be effective in England.[4]

---

**4.** Tentative Draft No. 3 of the Restatement (Revised) of Foreign Relations of the United States (March 15, 1982) recognizes that the free wheeling discovery common in American litigation is disfavored in most foreign countries. Section 420(1)(c) suggests that an American court issuing an order directing the production of documents or other information located abroad should consider the importance to the litigation of the documents requested, the specificity of the request, the extent to which compliance would undermine the important inter-

Judgments of United States courts can be enforced only by an action in England because English law does not provide for their registration.[5] In reacting to the interrogatories, the solicitor adopted what can be characterized as a politely cautious policy. He did not wish to expose Sun to the jurisdiction of an American court, but at the same time wished to be cooperative insofar as that was possible. Hence, he decided upon the device of using a letter to furnish the requested information rather than answering in the form desired by Union. An equally cooperative gesture on the part of Union would have been to respond to the letter instead of seeking the default.[6]

Sun did not exhibit a completely negative and hostile attitude. Although it did not wish to waive jurisdiction, it did supply the requested information to Union and to the district court. In sum, we find that Sun's reluctance to take action which it feared might undermine its jurisdictional position—a question which might well have substantial merit—does not demonstrate any bad faith on its part or any disrespect for the district court.

In view of Sun's lack of bad faith and its assertion of valid defenses on the merits, combined with lack of prejudice to Union, the requirements under Rule 60(b) for opening a default judgment are satisfied. We hold that the district court abused its discretion in refusing to hear the case on the merits.

Accordingly, the judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.

---

ests of the country where the information is located, and the possibility of securing the information through alternative means. The reporters' notes comment on the friction that discovery orders have generated abroad and the effect of "blocking statutes" enacted by many foreign countries in retaliation.

For a discussion of some of the practical problems and suggestions for improvement in the relationship between the United States and European countries on these questions, see A.H. Hermann, *Conflicts of National Laws with International Business Activity: Issues of Extraterritoriality* (1982) (British-North American Committee).

5. *See* Pettit & Styles, The International Response to the Extraterritorial Application of United States Antitrust Laws, 37 Bus.Law. 697, 704 (1982). Some judgments, such as those for "multiple damages," will not be enforced by British courts after the passage in 1980 of the Protection of Trading Interest Act. *Id.* at 705. *See generally,* Lowe, Blocking Extraterritorial

Jurisdiction: The British Protection of Trading Interests Act, 1980, 75 Am.J. Int'l L. 257 (1981). The large awards in products liability cases, as well as treble damages in antitrust cases have been of particular concern to British courts.

6. "In practice the English courts will try hard to give effect to requests for evidence emanating from foreign courts. Lord Denning M.R., in giving effect to letters rogatory in the first reported decision on the 1975 Act [giving effect to the Convention on Taking Evidence Abroad, 23 U.S.T. 2555], applied the principle of comity: 'It is our duty and our pleasure to do all we can to assist that court, just as we would expect the United States court to assist us in like circumstances.'" Pettit & Styles, *supra* note 5, at 701. Unfortunately, Lord Denning's cooperative attitude was not reflected in the subsequent review of the matter in the House of Lords. *Id.*