**Marcello FOY, et al.**

v.

**William DICKS, et al.**

**Civ. A. No. 92–6488.**

United States District Court, E.D. Pennsylvania.

Feb. 3, 1993.

**114**

Marvin W. Factor, Factor & Factor, Philadelphia, PA, for plaintiffs.

David Garcia–Villarreal, Chief Asst. City Sol., Philadelphia, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

This civil rights action arises out of a clash between plaintiffs and a group of Philadelphia police officers [1] that ended when Officer William Dicks allegedly shot Ricardo Foy in the back, rendering him a paraplegic. Marcello Foy claims that the same officers, former Police Commissioner Willie L. Williams, and the City of Philadelphia violated his constitutional rights when they arrested and imprisoned him for seven months.

The Clerk of this Court entered default against the City of Philadelphia and Officers Dicks, Farabelli, Cahill and Finn on December 10, 1992, and entered default against former Commissioner Williams eight days later. Now before us are the defendants' motion to set aside the defaults and the Foys' two motions for default judgments. Although, as will be seen, we harbor more than a little hesitation in our conclusion, we will grant defendants' motion and deny the Foys' motions. We shall, however, impose a significant monetary sanction against defendants to redress the waste they occasioned.

*Background*

Plaintiffs filed two related complaints, one on November 9, 1992 and one on November 10, 1992, both seeking damages from the defendants under 42 U.S.C. §§ 1983 and 1988. We consolidated the two complaints on November 16. On that same day, the Foys served all of the defendants except former Commissioner Williams with copies of the complaints at the City of Philadelphia Law Department.

1. Officers William Dicks, John Finn, Richard   Farabelli and M. Cahill.

On November 18, 1992, the Foys mailed copies of the complaints via certified mail to former Commissioner Williams at his new Los Angeles address.[2] The Foys included in their mailings a postage-paid return envelope addressed to the City of Philadelphia Law Department so that former Commissioner Williams could return the signed Acknowledgment of Receipt of Summons and Complaint to the City's attorneys. An employee at former Commissioner Williams's Los Angeles office received and signed for the deliveries on November 24. The Foys subsequently received the "green card" receipts from the U.S. Postal Service.

When the City and Officers Dicks, Farabelli, Cahill and Finn failed to answer by December 10, 1992, the Foys filed a request for an entry of default against them.[3] The Clerk of the Court entered the default on the same day. In order to notify the defendants that they had requested default, the Foys mailed a copy of their request to the City Solicitor's office. On December 17, 1992, we entered an Order that the Foys file by December 28 a motion for default judgment, with accompanying documentation, against all the defendants against whom default had been entered. We faxed this Order to both the Foys' counsel and the City Solicitor's office, and defendants' lawyer concedes he received that fax.

On December 18, 1992, the Foys filed a request for an entry of default against former Commissioner Williams because he, too, had not answered the complaints. Along with this request, the Foys filed a motion for default judgment against Commissioner Williams. The Clerk entered default on the same day. The Foys mailed a copy of their request to former Commissioner Williams in Los Angeles.

On December 28, the Foys filed a motion for default judgment against the City and Officers Cahill, Farabelli, Finn and Dicks. In that submission, the Foys informed us that they had already spent over two hundred thousand dollars for Ricardo Foy's medical treatment, and they represented that many of their claims for compensatory damages were as yet unliquidated. On January 5, we issued an Order requesting that the Foys inform us as to whether the damages they sought to recover from former Commissioner Williams differed from those they sought from the other defendants. The Foys responded that they did not.

On January 7, over seven weeks after the Foys had served five of the six defendants and three weeks after we transmitted our faxed Order, the defendants filed an answer to the Foys' complaints, together with a motion to set aside the entries of default.

*Discussion*

■ The decision as to whether to set aside an entry of default pursuant to Fed. R.Civ.P. 55(c)[4] is left primarily to the discretion of the Court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir.1984). Our Court of Appeals does not favor defaults, however, and requires that doubtful cases be resolved in favor of the party moving to set aside the default "so that cases may be decided on their merits." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–195 (3d Cir.1984).

Our Court of Appeals has directed us to consider four factors in deciding whether to set aside an entry of default. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71 (3d Cir. 1987). Those factors are: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Id.* at 73

---

**2.** Willie L. Williams is now head of the Los Angeles Police Department.

**3.** Fed.R.Civ.P. 12(a) requires that a defendant "serve an answer within 20 days after the service of the summons and complaint upon the defendant".

**4.** Fed.R.Civ.P. 55(c) provides:

(c) *Setting Aside Default.* For *good cause* shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

(citations omitted). We shall consider each factor in turn.

With regard to the first *Emcasco* factor, we find that the plaintiffs would not be prejudiced by the setting aside of the default. Although defendants waited over seven weeks before answering the complaints served on the City and Officers Cahill, Farabelli, Finn and Dicks, and over six weeks before answering the complaints served on former Commissioner Williams, "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default ... entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982). Moreover, plaintiffs have not asserted that they will suffer from "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the [entry of default] to support a finding of prejudice." *Feliciano*, 691 F.2d at 657. On this record, there is simply an insufficient basis for us to find that the plaintiffs would be prejudiced by our setting aside of the default. This first factor therefore weighs in defendants' favor.

■ With respect to the second factor, we are skeptical about defendants' ability to proffer a meritorious defense. A "meritorious defense" in this context is a defense which, if established at trial, would completely bar plaintiffs' recovery. *See Accu–Weather, Inc. v. Reuters Ltd.*, 779 F.Supp. 801, 803 (M.D.Pa.1991). Our Court of Appeals has held, however, that it is not enough for defendants to proffer "simple denials and conclusionary statements" in their answer. *$55,518.05 in U.S. Currency, supra*, 728 F.2d at 195. To the contrary, the defendants' answer must allege "specific facts", *id.*, which provide a basis for the Court to determine whether the defendants are able to advance a complete defense with "merit on its face". *Accu–Weather, supra*, 779 F.Supp. at 803.

■ The defendants' answer in the instant case consists primarily of such condemned "simple denials and conclusionary statements". For example, defendants state in their answer that they "are without knowledge or information sufficient to form a belief as to the truth of the averments in [several paragraphs of each complaint], and therefore, deny the allegations therein and demand strict proof at the trial of this case." [5] Plaintiffs advise us that the paragraphs to which the defendants object contain many facts found in both in the defendants' own arrest report and in the transcript of the state court criminal trial against Marcello Foy for assault in connection with the subject altercation.[6] Against this known history, defendants' assertions that they are without "knowledge or information" regarding these averments suggest that they did not make a good faith effort, within the meaning of Fed. R.Civ.P. 11, to explore easily accessible factual resources and prepare accurate and complete answers.[7]

Of greater concern in this regard is defendants' assertion in their conclusory answer to Ricardo Foy's complaint that the claim that Officer Dicks shot Ricardo Foy in the back is "untrue, inaccurate and misleading". Defendants' Answer to Ricardo Foy's Complaint, ¶ 15. It would appear the defendants make this unqualified response in spite of the availability of both medical records of the injury and transcripts of witness testimony regarding the shooting from the criminal trial that, we are told,

---

5. Punctuation as in original. *See* Defendants' Answers to Ricardo Foy's Complaint, ¶¶ 7–8, 13–14, 17–19, 44–48. Defendants' Answer to Marcello Foy's Complaint, ¶¶ 10–11, 14, 16–19, 23–27, 29, 34, 39, 44.

6. According to the plaintiffs, at the conclusion of the Commonwealth's case at Marcello Foy's criminal trial, the Court of Common Pleas Judge granted Foy's demurrer and dismissed all charges. Plaintiff's Memorandum in Opposition to Defendants' Motion to Set Aside the Default, at 6.

7. At the oral argument on the motion to set aside the default on January 25, 1993, the attorney from the City Solicitor's Office informed us that he intended to file an amended answer with more detailed and complete answers. He did not, however, file a motion for leave to file an amended answer.

confirm this physical fact.[8]

Thus, not only do the defendants' simple denials fail to satisfy the standard of *$55,-518.05 in U.S. Currency*, but the record adduced so far belies defendants' bald denials from the City's word processor. We cannot, therefore, state with any certainty that the defendants are able to proffer facially meritorious defenses to plaintiffs' claims, and we must find that the second factor weighs decidedly in favor of the plaintiffs.

As for the third *Emcasco* factor, we believe that the default was not entirely the result of defendants' culpable conduct. In this context, "culpable conduct means actions taken willfully or in bad faith." *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 124 (3d Cir.1983). The defendants' lawyer, an Assistant City Solicitor, apologizes in his motion to set aside the default for his "unintentional oversight" in failing to answer plaintiffs' complaints in a timely manner. Upon consideration of this apology and knowing the extraordinarily heavy case loads that Assistant City Solicitors bear, we do not believe that the defendants' attorney here acted "willfully" and in "bad faith".

Not far from our mind, however, is the memory of an opinion we issued less than three months ago in which we set aside an entry of default against the City in another civil rights case on our docket. *See Benson v. Sergeant Smith, et al.*, No. 92–4592, 1992 WL 350201 (E.D.Pa. Nov. 19, 1992). The combination of these two similar and equally troubling experiences with the City's attorneys made us concerned about the extent to which defaults occur in cases

the City Solicitor's office defends in this Court. In order to determine the existence and magnitude of that problem, we ordered defendants' counsel at the argument on January 25, 1993 to compile a list of Eastern District of Pennsylvania cases in which the Clerk of this Court entered default in the last twelve months against parties the Philadelphia City Solicitor's office represented. As ordered, defendants' counsel provided us with a list of five cases, a list we trust is complete.[9]

Although this list is not extensive enough for us to find that the City Solicitor's office operates in a wholesale "bad faith" manner by recklessly neglecting to address a pervasive institutional problem, we are nevertheless troubled by the recurrence of defaults in cases involving City of Philadelphia. As we noted above, we recognize that Assistant City Solicitors are overworked, and we are well aware of the City's financially troubled condition. We cannot, however, suspend the Federal Rules of Civil Procedure for the benefit of the City at the expense of its adversaries. To do so would be to condone the City's behavior and in effect carve the City out from the operation of Fed.R.Civ.P. 12(a).

In light of the fourth *Emcasco* factor that requires us to consider the effectiveness of alternative sanctions, and our finding that plaintiffs will not be prejudiced if we set aside the defaults, we will impose a monetary sanction against the defendants rather than refuse to set aside the defaults. This sanction is calculated to compensate plaintiffs' counsel for the time and expense they wasted on this, only the latest instance of procedural ineptitude in the City

**8.** Although the defendants' proposed answer filed to date contains only conclusory denials, at pp. 16–19 of the transcript of the January 25, 1993 oral argument the Assistant City Solicitor detailed the "meritorious defense" the City may, some day, proffer in a formal, Rule 12(a) answer.

**9.** The City lists the following cases:
1. *Lorenzo Brown v. Robert Covington, et al.*, Civil Action No. 92–0215, Default entered on March 30, 1992, Default set aside on July 21, 1992.
2. *Theodore Cheek v. City of Philadelphia, et al.*, Civil Action No. 91–6723, Default entered

on April 29, 1992, Motion to set aside default not filed due to settlement.
3. *Michael Washington v. City of Philadelphia*, Civil Action No. 92–1752, Motion for entry of default filed May 19, 1992, Motion denied as moot on June 18, 1992.
4. *John Benson, et al. v. Sergeant Smith, et al.*, Civil Action No. 92–4592, Default entered on September 29, 1992, Default set aside on November 19, 1992.
5. *Moles v. City of Philadelphia, et al.*, Civil Action No. 92–3135, Default entered November 30, 1992, Motion to set aside default is pending.

**118**

Solicitor's office.[10] We entertain the hope that this significant sanction may serve as a wake-up call to a somnolent City Legal Department.

For the foregoing reasons, we will deny plaintiffs' motions for default judgments and grant defendants' motion to set aside the defaults. We shall, however, impose a sanction that will fully redress the waste the plaintiffs suffered by the City's defaults.[11] An appropriate Order follows.

### ORDER

AND NOW, this 3rd day of February, 1993, upon consideration of the pending motions and memoranda in support thereof, and plaintiffs' letter of January 27, 1993 filed herewith, and after hearing oral argument and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. Plaintiffs' motion for default judgment against defendants William Dicks, Richard Farabelli, M. Cahill, John Finn and the City of Philadelphia is DENIED;

2. Plaintiffs' motion for default judgment against defendant Willie Williams is DENIED;

3. Defendants' motion to set aside entry of default is GRANTED upon the condition that defendants shall, by February 16, 1993, pay plaintiffs' counsel Five Thousand Nine Hundred One Dollars and Seventy-Five Cents ($5,901.75) attorneys fees and costs for those litigation expenses generated by defendants' failure to comply with Fed.R.Civ.P. 12(a).

---

10. Two lawyers represented plaintiffs regarding defendants' defaults. Marvin W. Factor, an attorney with twenty-four years' experience, worked twenty-one hours and forty minutes on the litigation associated with defendants' defaults. His hourly rate normally ranges from $175 to $250 an hour. We have used his lowest rate, $175 an hour, when calculating the attorneys' fees that would have never been incurred had the City complied with Fed.R.Civ.P. 12(a). The second lawyer, Kathleen Factor, who has been in practice for four years, worked twenty-five hours, and we calculated her total fees using her lowest hourly rate, $75 an hour.

11. Our sanction adds nothing for the waste we incurred in resolving these three motions.