**Daniel M. KAUFFMAN**

v.

**CAL SPAS.**

**Civ. A. No. 97–CV–3871.**

United States District Court, E.D. Pennsylvania.

March 2, 1999.

George D. Walker, Jr., Mark S. Scheffer, Larry Pitt and Associates, Philadelphia, PA, for plaintiff.

Michael J. Barry, Schnader, Harrison, Segal and Lewis, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an employment discrimination action brought by the plaintiff, Daniel M. Kauffman ("Kauffman") alleging the defendant, California Acrylic Industries, Inc. d/b/a Cal Spas ("Cal Spas") discriminated against him on the basis of his affliction with Crohn's disease in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Before the court is Cal Spas' motion to set aside the default judgment. For the following reasons, Cal Spas' motion will be denied.

## I. BACKGROUND

The defendant, Cal Spas is a California corporation with a principal place of business in Pomona, California and retail facilities in Chadds Ford, Pennsylvania and Ontario, California. Cal Spas employed Kauffman at its Chadds Ford facility from 1993 to 1995. On December 30, 1995 Kauffman was fired. He alleges Cal Spas fired him because of his Crohn's disease affliction.

On June 5, 1997 Kauffman filed the complaint in federal court. He sent the summons and the complaint to Cal Spas' Chadds Ford facility on September 15, 1997. All case-related material was forwarded to Cal Spas' office responsible for overseeing litigation. An employee at this office, however, filed away the material without notifying her superiors.

Consequently, Cal Spas did not enter an appearance or answer the complaint. Cal Spas also failed to respond to Kauffman's subsequent motion for default judgment. On December 11, 1997 the court granted the motion and scheduled a hearing to determine damages. Cal Spas did not respond to the default judgment order.

On January 6, 1998 the damages hearing was conducted after Kauffman's counsel twice telephoned Cal Spas' Chadds Ford office. On this same day the superiors at Cal Spas' "litigation" office first became aware of the Kauffman litigation. Their response was to notify Cal Spas' insurance carrier and request coverage.

On January 14, 1998 the insurance carrier sent Cal Spas a letter denying coverage. The superiors at the "litigation" office were unaware of this letter because it was misfiled. On January 23, 1998 an order

calculating the damages was issued. It is assumed that this order also was misfiled.

On August 29, 1998 Cal Spas fired the employee who misfiled the case-related material on grounds unrelated to the Kauffman litigation. But Cal Spas failed to discover the misfiled material. Cal Spas, therefore, did not know that this employee misfiled the Kauffman litigation material and still was unaware that its insurance carrier was not providing a defense. Cal Spas became aware when Kauffman requested a levy on properties at Cal Spas' Chadds Ford facility on October 9, 1998.

Cal Spas' Chief Administrative Officer, Lee Wendt ("Wendt") contacted Kauffman's counsel on October 23, 1998 and told him to hold off on a sheriff sale because within a week a check would be sent to satisfy the judgment. The check was not sent and Kauffman's counsel telphoned Wendt. Wendt told Kauffman's counsel to be patient and wait for the completion of a trade show in which Cal Spas was taking part. After Cal Spas' president refused to approve of the check, Cal Spas retained Philadelphia counsel. On November 12, 1998 Cal Spas filed the present motion.

## I. DISCUSSION

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default, and if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." In either situation, see *Feliciano v. Reliant Tooling Co. Ltd.*, 691 F.2d 653, 657 (3d Cir.1982) (noting that court should apply same factors in both setting aside default entry and opening default judgment), the court must consider the following factors: 1) whether lifting the default would prejudice the plaintiff; 2) whether the defendant has a meritorious defense; 3) whether the defen-

dant's conduct is excusable or culpable; and 4) the possibility of effective alternative sanctions. See *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir.1987). Default judgments, however, are greatly disfavored by the courts "and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." *Zawadski De Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir.1987).

Cal Spas argues that all four factors weigh in favor of opening the default judgment. Kauffman argues that Cal Spas' inexcusable and culpable conduct outweighs all other factors. The U.S. Court of Appeals for the Third Circuit provides little guidance as to how to balance the four factors. See *Grow Tunneling Corp. v. Conduit & Foundation Co., Inc.*, Civ.A. No. 96–3127, 1996 WL 411658, at *3 (E.D.Pa. July 16, 1996). The court in *Scottsdale Ins. Co. v. Littlepage*, CIV.A. No. 92–2734, 1993 WL 275162 at *5–6 (E.D.Pa. July 16, 1993), however, did find the defendant's conduct to be so inexcusable and culpable that it outweighed other factors that favored opening the judgment.

### A. Prejudice

Kauffman will not suffer prejudice if the default judgment is opened. Prejudice is demonstrated "if vacating the default judgment order results in the loss of evidence or the impairment of the plaintiff's ability to pursue the claim." *East Coast Express, Inc. v. Ruby, Inc.*, 162 F.R.D. 37, 39 (E.D.Pa.1995); *Feliciano*, 691 F.2d at 657. Since Kauffman does not claim that any of these consequences would result from granting Cal Spas' motion, this factor weighs in Cal Spas' favor.

### B. Meritorious Defense

This factor also supports vacating the default judgment. "The showing of a meritorious defense is accomplished when allegations of defendant's answer,[1] if estab-

---

1. The allegations in Cal Spas' motion to open the default will be considered since Cal Spas did not answer the complaint. See *Reilly v.*

*Keystone Health Plan East, Inc.*, Civ.A. No. 98–CV–1648, 1998 WL 422037, at *2, 1998 U.S. Dist. LEXIS 11337 at *7 n. 4 (E.D.Pa.

lished at trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984) (internal quotations and citation omitted). A general denial is insufficient to overturn a default. *See* 10 James Wm. Moore et al., *Moore's Federal Practice*, 55.50[1][b][ii] (3d ed.1998). Instead the defendant must assert specific facts supporting the existence of a prima facie meritorious defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

■ Cal Spas argues it has two meritorious defenses: 1) Kauffman was not a disabled person under the ADA; and 2) Kauffman was unable to perform the essential functions of the job. To establish a claim under the ADA, the plaintiff must establish: "(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995) (citations omitted); *Simmerman v. Hardee's Food Systems, Inc.*, Civ.A. No. 94–6906, 1996 WL 131948, at *2, 1996 U.S. Dist. LEXIS 3437 at *7–8 (E.D.Pa0003ES. March 25, 1996).

■ Cal Spas first argues that Kauffman is not a disabled person under the ADA. A disability actionable under the ADA must "substantially limit one or more of the individual's major life activities." *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 911 (11th Cir.1996) (citations omitted), *cert. denied*, —— U.S. ——, 118 S.Ct. 630, 139 L.Ed.2d 610 (1997). Cal Spas contends that Kauffman's complaint contains no allegation that any major life activity was substantially limited by Kauffman's Crohn's disease. Cal Spas, however, does not allege any specific facts that, if proved at trial, would show that Kauff-

man's Crohn's disease is not an actionable ADA disability. This defense, therefore, is not meritorious.

In contrast, Cal Spas' defense that Kauffman's absenteeism and tardiness exhibited a failure to perform an essential function of his job is meritorious. Courts consistently have recognized that regular attendance is an essential function of any job. *See, e.g., Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir.1994); *Carr v. Reno*, 23 F.3d 525, 529–30 (D.C.Cir.1994); *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir.) (citations omitted), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 657, 130 L.Ed.2d 560 (1994); *Santiago v. Temple Univ.*, 739 F.Supp. 974, 979 (E.D.Pa.1990), *aff'd without op.*, 928 F.2d 396 (3d Cir.1991). Cal Spas allegations of Kauffman's absenteeism and tardiness, if proved at trial, would constitute a meritorious defense.

### C. Inexcusable or Culpable Conduct

■ Culpable conduct surpasses mere negligence, *see Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir.1984), and consists of willful, intentional, reckless or bad faith behavior. *See Id.; Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 124 (3d Cir.1983); *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 308 (E.D.Pa.1995). The court may impute such culpability from a defendant's "[r]eckless disregard for repeated communications from either the plaintiff or the Court." *Scottsdale*, 1993 WL 275162 at *5 (internal quotations omitted); *Hritz*, 732 F.2d at 1183. Here Cal Spas' reckless disregard for federal procedure and practice in this litigation overwhelmingly weighs in favor of allowing the default judgment to stand.

It is clear that all case-related material sent by Kauffman and the court reached Cal Spas' California office responsible for handling litigation. One employee misfiled all of the material and thereby initially

July 27, 1998); *Burkey v. Burkey*, No. CIV.A. 97–1362, 1998 WL 254005 at *1, n. 6 (E.D.Pa.

May 14, 1998).

prevented Cal Spas from learning of the litigation. At this point, the misfiling of this material may have constituted excusable neglect. However, Cal Spas' subsequent actions foreclosed that interpretation of Cal Spas' conduct and, furthermore, showed culpability.

On January 6, 1998 Cal Spas finally became aware of the litigation and the default judgment in spite of the best efforts of Cal Spas' misfiling employee. With this knowledge, Cal Spas requested insurance coverage and did nothing else. Cal Spas assumed it was covered and never questioned this assumption for approximately nine months. The assumption was wrong.

On January 14, 1998 Cal Spas' insurance company sent a letter denying coverage. This letter and a court order dated January 23, 1998 were misfiled. Inexplicably, the actions of Cal Spas' misfiling employee remained undetected for at least six months after Cal Spas became aware of the Kauffman litigation. It would seem that not even curiosity could inveigle Cal Spas into investigating why it did not learn of the Kauffman litigation earlier.

On August 29, 1998 Cal Spas fired the misfiling employee on grounds unrelated to the Kauffman litigation. These grounds did not persuade Cal Spas to look for the employee's other misdeeds. Cal Spas, thus, continued to falsely believe its insurance carrier was handling the Kauffman litigation. This mistaken belief was corrected when Kauffman levied on Cal Spas' properties at Cal Spas' Chadds Ford facility on October 9, 1998.

After October 9, 1998 Cal Spas' representative, Wendt, contacted Kauffman's counsel to get him to hold off on a sheriff sale by telling him that a check would be sent as soon as Cal Spas' president signed it. Kauffman's counsel waited. Cal Spas obtained Philadelphia counsel and brought this present motion.

This is not a case of excusable neglect, mistake or inadvertence. Cal Spas was on notice, as of January 6, 1998, and knowingly chose not to appear until Kauffman attempted to collect the damages awarded in the default judgment on October 9, 1998. Wendt's efforts to stall Kauffman and his counsel also show Cal Spas' conduct to be intentional. This factor, therefore, favors refusing to set aside the default judgment.

### D. Other Sanctions

The court also must evaluate the effectiveness of alternative sanctions. *See Grow Tunneling Corp. v. Conduit & Foundation Co., Inc.*, Civ.A. No. 96–3127, 1996 WL 411658 at * 7 (E.D.Pa. July 16, 1996). A default judgment should be a sanction of "last, not first, resort." *Emcasco*, 834 F.2d at 75. This factor may weigh in favor of opening the default if it was imposed as an administrative act pursuant to Rule 55. *See Reilly*, 1998 WL 422037, at *6, 1998 U.S. Dist. LEXIS 11337 at *20.

Kauffman's default judgment, however, clearly was more than an administrative act. The default judgment was not merely entered by the clerk, but was ordered by the court. Alternative sanctions such as the reimbursement of Kauffman's counsel fees and costs would be a inappropriate sanction for a willfully defaulting commercial party like Cal Spas. To preserve the finality of the court's judgments and to secure "the just, speedy and inexpensive determination of every action", Fed. R.Civ.P. 1, this factor weighs in favor of refusing to set aside the default judgment.

### III. CONCLUSION

On balance, the inexcusable and culpable conduct of Cal Spas and the absence of adequate alternative sanctions outweigh the other factors favoring setting aside the default judgment. Therefore, Cal Spas' motion will be denied.

### ORDER

AND NOW, this 2nd day of March, 1999, upon consideration of Defendants'

Motion to Set Aside the Default Judgment and Plaintiff's response thereto, it is hereby ORDERED that said motion is DENIED.