

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2006

# Brown v. Thomas

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1669

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Brown v. Thomas" (2006). *2006 Decisions.* Paper 1373.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1373

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 02-1669

———————————

RHONDELL BROWN,

Appellant

v.

DENISE THOMAS, RPN; SUSAN NOSKO, Health Care Administrator;
JOSEPH ROLLINS, Assistant to the Superintendent; DR. WILLIAM
RYAN, Psychiatrist; WILLIAM MONSOUR, DR. Physician; DR. JAWAD
SALAMEH, Physician; SYLVIA GIBSON, Deputy Superintendent;
RAYMOND SOBINA, Superintendent; MARTIN F. HORN, Commissioner;
CENTRAL OFFICE REVIEW COMMITTEE (CORC), Department of Corrections;
KATHLEEN ZWIERZYNA, Director, Bureau of Health Care Services

———————————————————————————

On Appeal From the United States District Court
For the Western District of Pennsylvania
(W.D. Pa. No. 98-cv-00134J)
District Judge: The Honorable Gustave Diamond

———————————————————————————

Submitted Under Third Circuit L.A.R. 34.1
February 8, 2006

Before: MCKEE, FUENTES AND NYGAARD, <u>CIRCUIT</u> <u>JUDGES</u>

(Filed: March 29, 2006)

1

---

OPINION

---

PER CURIAM

Rhondell Brown, a former prisoner in the Pennsylvania state prison system, appeals the District Court's orders dismissing his § 1983 action against several defendants and awarding summary judgment to the remaining defendants. We will affirm.

While he was housed at SCI-Somerset in 1998, Rhondell Brown filed a § 1983 action, claiming that prison administration defendants denied him adequate access to the grievance procedure with respect to his complaints about his poor medical treatment in 1996, and that all of the defendants denied him adequate medical care for a serious eye condition by (1) delaying emergency treatment for his eye condition (the "delayed eye treatment claim"); and (2) denying him contact lenses to balance his vision (the "balanced vision claim").

Brown alleges that in July 1995, his eye doctor notified prison medical staff that his eye condition could cause sudden changes in vision that would require immediate medical attention. In January 1996, after complaining about problems with his left eye, Brown was seen by an eye specialist, Dr. Dellone, who advised the prison medical department that Brown was to report any changes in his vision of the left eye to her office. Dr. Dellone asked that Brown be scheduled for a follow-up visit in February 1996, "and subsequent visits on an as needed basis."

2

On April 22, 1996, after experiencing pain and impaired vision in his left eye, Brown informed the correctional officers of his need to see an eye specialist. When the correctional officers called the medical department about immediate emergency treatment, they were told that Brown had to submit a "sick call request." Brown complied, filing a sick call request that same day. On April 23, 1996, Brown's condition deteriorated further and he again requested immediate emergency treatment, which was denied. On April 24, 1996, Brown saw Dr. Ryan, a psychiatrist. His visit with Ryan was terminated prematurely, however, when Brown insisted on seeing an eye specialist. Arrangements were made for him to be evaluated by Dr. Monsour later that day. It was Dr. Monsour who directed a staff member to schedule an appointment for Brown with the eye specialist as soon as possible. In response to earlier complaints by Brown about the delay in arranging an appointment with Dr. Dellone, Superintendent Sobina and Susan Nosko, a health care administrator, both reassured Brown that his vision problems would be evaluated by the eye specialist.

On April 28, 1996, Brown awoke unable to see with his left eye. On April 29, 1996, seven days after his initial request for emergency medial treatment of his left eye, Brown was evaluated by Dr. Dellone, who told him that he would have emergency surgery the next day. Dr. Dellone's April 29, 1996 faxed communication to Dr. Monsour, however, only noted that Brown required "scleral buckling," "as soon as possible." On May 1, 1996, Brown wrote to Superintendent Sobina complaining about further deterioration in his left eye and requesting a transfer to SCI-Pittsburgh. Sobina

3

immediately notified Brown that he was scheduled to have eye surgery on May 2. Brown underwent eye surgery on May 2, 1996, and a second surgery on June 4, 1996.

In a separate set of allegations, Brown claims that in 1996 and 1997, he had problems obtaining adequate post-surgical corrected vision lenses to balance the vision in his eyes. In November 1996, he inquired about a contact lens for his right eye and was told by Nurse Thomas that eyeglasses had been ordered for him.[1] He renewed his request to the medical department for a contact lens in mid-1997, claiming that his current eyeglasses caused blurred vision and flashes in his right eye. He forwarded the same request to Deputy Superintendent Gibson and to Grievance Coordinator Rollins, and then filed formal grievances when the medical department denied his request for a contact lens. Superintendent Sobina ultimately responded to Brown's complaints in a personal interview with him in the housing unit. Sobina told Brown that neither of the two optometrists who had evaluated Brown recommended contact lenses as necessary.

Brown claims that he suffers from ultra-sensitivity to light, poor peripheral vision, poor depth perception, blurred and blotched vision, and asserts that he frequently suffers from headaches, light-headed sensations, and double vision because he was denied immediate medical attention and the best possible corrective lens prescriptions to balance his vision. He asserts that the delay in receiving eye surgery, caused by sending him to

---

[1] Nurse Thomas followed up on June 4, 1997, stating that, according to the doctor's evaluation and prescription, Brown had been prescribed eyeglasses, not contact lenses.

see a psychiatrist instead of an eye specialist, reduced the probability that corrective surgery could fully restore his vision. He claims that all of the defendants conspired to deny him prompt medical treatment and meaningful access to the grievance procedure. Finally, Brown claims that the Central Office Review Committee refused to obey its own mandates by failing to appoint a medical staff member to evaluate medical complaints and grievances.

Certain defendants moved to dismiss Brown's complaint under Rule 12(b)(6) contending that Brown's delayed eye care claim was barred by the statute of limitations and that, in any event, Brown's Complaint failed to state any claim upon which relief could be granted. By order dated September 21, 1999, the District Court dismissed all claims against Drs. Ryan and Salameh because the Complaint contained no allegations from which the District Court could determine that either defendant had been deliberately indifferent to Brown's medical needs. The District Court dismissed Brown's inadequate prison grievance process claim against Rollins, Gibson, Sobina, Horn, Zwierzyna, and the Central Review Committee, holding that the claim was non-cognizable under § 1983 because Brown had no constitutional right to a particular prison grievance procedure. See Massey v. Helman, 259 F.3d 641, 647 (7th Cir.2001) (citing cases). As for the remaining defendants, Thomas, Nosko, and Monsour, the District Court dismissed Brown's balanced vision claim for failure to state a claim, but denied dismissal of Brown's delayed eye care claim, holding that it was not barred by the statute of limitations.

The District Court appointed counsel to represent Brown on the delayed eye care

5

claim. In April 2001, the Clerk entered a default against Monsour, which the District

Court later set aside on Monsour's motion. Monsour then moved for dismissal under

Rule 12(b)(6), and Thomas and Nosko moved for summary judgment.[2] By orders entered

in January and February, 2002, the District Court adopted the Magistrate Judge's

recommendation that Monsour's motion be treated as one for summary judgment and

granted summary judgment as to Monsour, Thomas, and Nosko, on the delayed eye care

claim. This timely appeal followed.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the

District Court's dismissals pursuant to Fed. R. Civ. P. 12(b)(6), see Emerson v. Thiel

College, 296 F.3d 184, 188 (3d Cir. 2002), and the District Court's orders granting

summary judgment, see D'Amico v. CBS Corp., 297 F.3d 287, 290 (3d Cir. 2002).

Summary judgment is appropriate if, viewing the record in the light most favorable to the

non-moving party, there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48; see also Fakete v. Aetna, Inc., 308 F.3d 335,

337 (3d Cir. 2002). We will affirm the dismissal of all claims against defendants Salameh

and Ryan, and we will affirm the dismissal of the prison grievance process claim as to

defendants Rollins, Gibson, Sobina, Horn, Zwierzyna, and the Central Review

---

[2] During the pendency of the summary judgment motions, Browns' counsel moved
to withdraw from the case and Brown moved to proceed pro se. He also filed a motion
for appointment of stand-by counsel.

Committee, for the reasons set forth by the District Court in its September 1999 opinion. We will affirm the District Court's dismissal of Brown's balanced vision claim under Rule 12(b)(6) and its grant of summary judgment in the defendants' favor with respect to Brown's delayed eye care claim, for the reasons discussed below.

To demonstrate a <u>prima facie</u> case of cruel and unusual punishment premised on the denial of medical care, the plaintiff must show that the defendants acted "with deliberate indifference to his or her serious medical needs." <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>see also</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002). A prison official violates the Eighth Amendment when he knows of and disregards an excessive risk to inmate health or safety. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The official must be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. <u>See</u> <u>id.</u> Negligence in the administration of medical treatment to prisoners is not actionable under the Constitution. <u>See</u> <u>Government of the V.I. v. Martinez</u>, 239 F.3d 293, 301 (3d Cir. 2001). Failure to provide adequate medical treatment violates the Eighth Amendment when it results from deliberate indifference to a prisoner's serious illness or injury. <u>See</u> <u>Martinez</u>, 239 F.3d at 301-02.

## I. The Balanced Vision Claim

Assuming the truth of the allegations in Brown's Complaint, we conclude that the Complaint fails to state an Eighth Amendment deliberate indifference claim as to any of the defendants with respect to Brown's need for corrective lenses. <u>See</u> <u>Morse v. Lower</u>

7

Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Brown alleges that the eyeglasses the prison provided for him were inadequate and that he wanted a contact lens for his right eye. Brown does not allege that any defendant ignored his vision problem or delayed his access to corrective lenses for non-medical reasons. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). A difference of opinion between Brown and the prison medical staff as to whether contact lenses or eyeglasses are the preferred treatment for his condition does not amount to an Eighth Amendment violation. Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (noting that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment."

## II. The Delayed Eye Care Claim

With respect to Brown's claim that Dr. Monsour delayed his eye care treatment, the record indicates that: (1) Dr. Monsour ordered an appointment with Brown's eye specialist as soon as he became aware of the condition on April 24, 1996; (2) Brown was treated by Dr. Dellone five days later, on April 29, 1996; and (3) Brown subsequently underwent the required surgery, on May 2, 1996. Viewing the undisputed facts in the light most favorable to Brown, we find no evidence to show that Monsour acted in conscious disregard of serious risk to Brown's health. Accordingly, the District Court correctly granted summary judgment in Monsour's favor.

The District Court properly granted summary judgment to defendants Thomas and

8

Nosko for essentially the same reasons. The record indicates that defendants Thomas and Nosko first became aware of Brown's request for medical attention on April 24, 1996, the same day that Brown was seen by Dr. Monsour and referred to Dr. Dellone. Brown offers no evidence to dispute Thomas's and Nosko's assertions that they neither controlled nor intervened in the surgery scheduling process. Brown submitted the unsworn statement of an optometrist, stating that "[r]etinal tears and detachments are best treated as soon as possible." An unsworn statement does not constitute the kind of competent evidence necessary to create a genuine issue of material fact at summary judgment. In any event, even if the optometrist had completed a sworn affidavit, such a statement does not address whether the ten-day period between Brown's earliest complaint of new problems with his left eye on April 22, 1996, and his eye surgery on May 2, 1996, was medically acceptable "delay," or whether Brown suffered any injury from the alleged delay in treatment. The District Court correctly concluded that, based on the undisputed facts, Brown failed to demonstrate an Eighth Amendment claim of deliberate indifference as to defendants Thomas and Nosko.

Although the District Court did not set forth the grounds for dismissal of Brown's Eighth Amendment delayed eye care claim against defendants Gibson, Sobina, and Zwierzyna, we agree that the claim against these defendants is constitutionally insufficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 109 (3d Cir. 2002). Brown asserts that the grievance exhibits attached to his complaint demonstrate that each of these defendants was deliberately indifferent to his serious eye condition. However,

9

the record plainly falls short of the required showing of deliberate indifference. Brown makes no specific allegations against Gibson regarding the delay in eye care. Superintendent Sobina promptly answered Brown's April 23, 1996, request to see an eye doctor by referring the request to defendant Nosko on April 24, 1996. When Brown submitted a second request for medical treatment to Sobina on May 1, 1996, Sobina promptly responded on May 2 by verifying that Brown was scheduled for surgery that same day. Although Brown asserts that defendant Zwierzyna's delay in responding to his letter constitutes deliberate indifference, his most recent letter to her was dated April 22, 1996, several days before he asserts he lost vision in his left eye. During the interim between Brown's letter and Zwierzyna's May 1, 1996, response, two doctors examined Brown and immediately scheduled surgery for him, which he underwent on May 2, 1996. None of these circumstances demonstrate conscious disregard of an excessive risk to Brown's health or safety on the part of defendants Gibson, Sobina and Zwierzyna.

We have carefully reviewed Brown's argument challenging the District Court's decision to set aside the default against Dr. Monsour and his argument that the District Court erred in failing to appoint new counsel. The District Court did not err in setting aside the default. See Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982). There is no concrete record evidence of willful disregard or bad faith on Monsour's part, Brown was not prejudiced by the District Court's decision to vacate the default, and Monsour had a strong factual defense to Brown's delayed eye care claim. As for appointment of new counsel, the record indicates that Brown sought to proceed pro se,

10

requesting that the District Court appoint counsel to function essentially as "stand-by" counsel in order to assist Brown in his efforts to represent himself.  Based on the record, we cannot say that the District Court abused its discretion in granting Brown's motion to proceed pro se without appointing stand-by counsel.

Accordingly, we will affirm the Judgment of the District Court.